Corina BUSTILLOS and Virginia Bustillos, As Survivors and Heirs at Law of the Estate of Raquel Arriola, Decedent, and the Estate of Raquel Arriola, Appellants,

v.

Patricia ROWLEY, M.D., Appellee.

No. 08–04–00331–CV.

Court of Appeals of Texas, El Paso.

Aug. 31, 2005.

Rehearing Overruled Sept. 28, 2005.

See also, 116 S.W.3d 821.

Heather A. Ronconi, El Paso, TX, for Appellants.

Barry Peterson, Peterson Farris Pruitt & Parker, Amarillo, TX, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *OPINION*

DAVID WELLINGTON CHEW, Justice.

Appellants Corina Bustillos and Virginia Bustillos, as Survivors and Heirs at Law of the Estate of Raquel Arriola, Deceased, and the Estate of Raquel Arriola appeal from the dismissal of their medical malpractice claim against Appellee Patricia Rowley, M.D. ("Rowley"). In the lawsuit, Appellants asserted claims against Rowley for negligent emergency physician care and treatment of their mother, Raquel Arriola, which the Appellants alleged caused her death. The Appellants contend that the trial court erred in granting Rowley's motion to dismiss because: (1) Rowley waived her statutory right to challenge the adequacy of the expert reports; and (2) the two expert reports provided by Appellants satisfied the requirements under the former Texas Medical Liability and Insurance Improvement Act ("the Act"). We reverse and remand.

Late in the evening on March 4, 2000, Raquel Arriola was admitted to the emergency room at Sierra Medical Center in El

Paso, Texas. Upon admission, Ms. Arriola complained of pleuritic chest pain, chills, headache, diarrhea, and nausea. Her medical history revealed systemic lupus erythematosus and spleen removal. Rowley, the examining emergency room physician, ordered a chest x-ray, ECG, and certain laboratory tests. Ms. Arriola decompensated and arrested at 3:42 a.m. She was resuscitated and admitted to the intensive care unit, but arrested again at 5:18 a.m. and could not be revived.

On March 5, 2002, the Appellants, Ms. Arriola's surviving children and her estate, brought a medical malpractice suit against Rowley and Tenet Hospitals Limited ("Tenet"), the operator of the hospital under the Act.[1] With regard to Rowley, the Appellants alleged in their amended petition that Rowley failed to properly and timely diagnosis and treat Ms. Arriola's infection, cardiac condition, and pleural effusion, failed to order continuous monitoring of Ms. Arriola's oxygen saturation level, failed to timely follow-up on physician orders for administration of antibiotics, failed to order a CT scan prior to lumbar puncture, and failed to order two blood independent cultures for Ms. Arriola. The Appellants alleged the hospital was negligent because hospital staff took no action to address the abnormal ECG results, electrolyte imbalance, mild respiratory desaturation, or low white blood cell count and failed to monitor Ms. Arriola's vital signs or her cardiac condition. The Appellants further alleged that as a result of Rowley's and the hospital employees' failure to properly and timely monitor and treat Ms. Arriola's infection, cardiac condition, and subsequent respiratory distress, Ms. Arriola suffered a full respiratory and cardiac arrest and died.[2]

On September 3, 2002, Appellants filed two expert reports and curricula vitae from Paul K. Bronston, M.D. and Margaret Bowers, R.N., to satisfy the expert report requirements of the Act. *See* former TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(Repealed 2003). On October 2, 2002, codefendant Tenet filed a motion to dismiss in which it challenged the adequacy of Dr. Bronston's and Nurse Bowers' reports. Shortly thereafter, Rowley's counsel and Appellants' counsel entered into a Rule 11 agreement that extended Appellants' deadline to file the expert reports until November 24, 2002.

According to the court docket sheet, the trial court denied Tenet's motion to dismiss on January 13, 2003.[3] Tenet brought an original proceeding in this Court to

---

1. In 2003, the Legislature repealed the Act, effective September 1, 2003, and replaced it with Chapter 74 of the Civil Practices and Remedies Code. *See* (Acts of 1977, 65th Leg., R.S., ch. 817, 1977 TEX. GEN. LAWS 2039, 2039–2053, amended by Acts of 1993, 73rd Leg., R.S., ch. 625, § 3, 1993 TEX. GEN. LAWS 2347, 2347–49, amended by Acts of 1995, 74th Leg., R.S., ch. 140, § 1, 1995 TEX. GEN. LAWS 985, 985–989)(former TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.01–16.02, the "Medical Liability and Insurance Improvement Act"), repealed by Acts of 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 TEX. GEN. LAWS 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001 et seq. (Vernon 2005)(eff.Sept.1, 2003)). This case was filed prior to September 1, 2003, therefore, we will refer to the repealed statute throughout this opinion as it is the version applicable to this case.

2. The plaintiffs' petition was later amended to add Staff Care, Inc. as a defendant in their lawsuit. Staff Care, Inc. was the staffing agency that had entered into a physician services agreement with Rowley to provide emergency medicine services to Staff Care, Inc.'s clients as an independent contractor. According to the trial court's docket sheet, Staff Care, Inc. was non-suited on September 13, 2004.

3. Neither Tenet's motion to dismiss nor the trial court's order denying that motion were included in the record for this appeal.

challenge the trial court's decision and sought mandamus relief. *See In re Tenet Hosps. Ltd.,* 116 S.W.3d 821 (Tex.App.-El Paso 2003, orig. proceeding). In *In re Tenet Hosps. Ltd.,* this Court concluded that the trial court had abused its discretion in denying Tenet's motion because the two expert reports provided had wholly failed to address the causal relationship between the breach of the standard of care and Ms. Arriola's death. *In re Tenet Hosp., Ltd.,* 116 S.W.3d at 826–27. Thus, this Court found that Bronston's and Bowers' reports did not constitute a good faith effort to comply with the definition of an expert report under former Section 13.01(r)(6). *See id.* at 827; former TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(6). On March 15, 2004, the trial court granted Tenet's motion to dismiss and for sanctions and Tenet was dismissed from the suit.

On July 26, 2004, Rowley filed a motion to dismiss, in which she argued that neither Dr. Bronston's nor Nurse Bowers' reports satisfied the requirements of an expert report under former Section 13.01(r)(6) of the Act. Rowley later amended her motion to also challenge Appellants' filed expert report from Robert J. Levine, M.D. In addition to her previous contentions, Rowley also argued that Dr. Levine's report failed to satisfy the requirements of an expert report and had not been timely filed pursuant to the parties' Rule 11 agreement. In response to Rowley's motion, Appellants stated that Rowley's challenge to Nurse Bowers' report was not relevant to their claims asserted against her. With regard to her attack on the reports of Drs. Bronston and Levine, Appellants argued that Dr. Levine's report was both timely and adequate, and that

taken together, the Bronston and Levine reports adequately addressed all required elements of the Act.[4] In addition, Appellants asserted that Rowley had impliedly waived her right to challenge the reports by: (1) her delay in filing her motion to dismiss; and (2) her conduct in filing a Letter Brief to this Court in the *In re Tenet Hosps. Ltd.* mandamus proceeding, in which she stated to the Court that she "did not object to the expert reports of Margret [sic] Bowers, R.N. and Paul K. Bronston, M.D., and ha[d] no true interest in the outcome of this Court's ruling."

The trial court granted Rowley's motion to dismiss and this appeal now follows.

## WAIVER

■ In their first issue, Appellants argue that Rowley waived her right to complain about the adequacy of expert reports because she declared she had no interest in the outcome of dismissal proceedings brought by Tenet, a similarly situated co-defendant, in its petition for mandamus relief. Appellants contend that by her conduct, specifically, making certain statements in a Letter Brief filed with this Court in reply to Tenet's mandamus proceedings, coupled with her lengthy delay in filing her motion to dismiss, Rowley impliedly waived her statutory right to challenge the expert reports in this case.

Former Section 13.01 of the Act requires a plaintiff to provide each defending physician or health care provider with one or more expert reports, with a curriculum vitae of each expert listed in the report, within 180 days of filing a health care liability claim or the last day of any ex-

---

4. Apparently, Rowley was challenging the same expert report from Dr. Bronston that this Court had found to have been deficient for purposes of satisfying the statutory requirements of an expert report. The parties agree that the Bronston report attacked by Rowley in her motion is, in fact, the same Bronston report we discussed at length in *In re Tenet Hosps. Ltd.,* 116 S.W.3d 821 (Tex. App.-El Paso 2003, orig. proceeding).

tended period as permitted under the statute. Former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d). Where an expert report is tendered, the defendant may challenge the adequacy of the report. *See id.* at § 13.01(*l*); *Hart v. Wright*, 16 S.W.3d 872, 876 (Tex.App.-Fort Worth 2000, pet. denied). The trial court is authorized to grant a motion to dismiss "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section." Former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.0(*l*); *American Transitional Care Ctrs. Of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex.2001).

 Former Section 13.01 imposes no statutory deadline for a defendant physician or health care provider to file a motion to dismiss.[5] *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003); former Tex.Rev.Civ. Stat. Ann. art 4590i, § 13.01. However, a defendant may waive the right to dismissal if the defendant's silence or inaction is inconsistent with the intent to rely upon that right. *Jernigan*, 111 S.W.3d at 157. The mere fact that a defendant waits to file a motion for dismissal is insufficient to establish waiver. *Id.* As the *Jernigan* Court explained, waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id.* at 156–57, *citing Motor Vehicle Bd. v. El Paso Indep. Auto Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex.1999). There is no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Id.*, at 156, *citing*

*Maryland Cas. Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex.1966).

Appellants assert that Rowley engaged in conduct beyond mere delay in filing her motion to dismiss by the affirmative statements she made in her Letter Brief to this Court in reply to Tenet's petition for writ of mandamus. In her Letter Brief, Rowley stated:

> COMES NOW, PATRICIA ROWLEY M.D., and submits this letter brief in reply to Relator's Petition for Writ of Mandamus pursuant to this Court's order of February 19, 2003. Dr. Rowley did not object to the expert reports of Margret [sic] Bowers, R.N. and Paul K. Bronston, M.D., and has no true interest in the outcome of this Court's ruling. Therefore, Rowley waives her right to file any response to Relators Petition unless otherwise ordered by this Court.

Appellants maintain that Rowley's conduct in declaring that she did not want to object or otherwise participate in the mandamus proceeding, in addition to her delay, was inconsistent with preserving her statutory right to challenge the reports pertaining to the claims asserted against her.

Considering the undisputed facts and circumstances, we conclude Rowley's actions were not inconsistent with an intent to assert her right to challenge the sufficiency of the expert reports. Codefendant Tenet filed a motion to dismiss and for sanctions, in which it challenged the adequacy of Dr. Bronston's and Nurse Bowers' reports. Rather than seek dismissal, Rowley and codefendant Staff Care, Inc. agreed with Appellants to extend the deadline to file expert reports. *See* former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(h)("The affected parties may agree

---

5. Under the current version of the statute, a defendant physician or health care provider must file and serve any objection to the sufficiency of an expert report no later than twenty-one days after being served with the report or all objections are waived. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)(Vernon 2005).

to extend any time period specified in Subsection (a) or (d) of this section."). Rowley's decision not to file a motion to dismiss contemporaneously with Tenet or to join Tenet in its motion, was not inconsistent with an intent to later assert her right to dismissal. Rather, Rowley's conduct indicates an attempt to obtain additional information with respect to the merits of the claims asserted against her before seeking dismissal of the suit.

Moreover, Rowley's conduct in filing the Letter Brief with this Court in Tenet's mandamus proceeding is also insufficient to establish waiver. Rowley's statements clearly indicate her desire to inform this Court of the procedural posture of the underlying case, that is, Tenet, not she, had objected to the expert reports filed in the case. Because Rowley was not a party to Tenet's motion, she correctly represented to this Court that she was not entitled to mandamus relief, the outcome sought by Tenet in its petition. Rowley's statements were not inconsistent with an intent to assert the right to dismissal on her own behalf. Therefore, we reject Appellants' waiver contention. Issue One is overruled.

## ADEQUACY OF EXPERT REPORTS

In their second issue, Appellants argue that the trial court abused its discretion in granting Rowley's motion to dismiss because the expert reports from Dr. Bronston and Dr. Levine satisfied the requirements of the Act. Specifically, Appellants assert that reports of Drs. Bronston and Levine, taken together, adequately addressed all the required elements of the Act in order to inform the trial court that their claim was not frivolous.

### Standard of Review

We review the trial court's granting of a Section 13.01 motion to dismiss under an abuse of discretion standard. *Palacios,* 46

S.W.3d at 877. An abuse of discretion exists when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court does not abuse its discretion merely because it decides a matter within its discretion differently than an appellate court would do in a similar circumstance. *Downer,* 701 S.W.2d at 242.

### Expert Report Requirement

If a claimant timely furnishes an expert report, a defendant may file a motion challenging the adequacy of the expert report. *See* former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d), (e), & (*l*). The trial court shall grant the motion only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See id.* at § 13.01(*l*). The statute defines an expert report as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding: (1) applicable standards of care; (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6).

Although a report need not marshal all the plaintiff's proof, it must include the expert's opinions on the three elements identified in the statute. *Palacios,* 46 S.W.3d at 878–79. In detailing these elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into

question. *Id.* at 879. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *Id.* All of the relevant information must be contained within the four corners of the report. *Id.* at 878. If a report omits any of the statutory elements, it cannot constitute a good faith effort. *Id.* at 879.

### Dr. Bronston's Expert Report

■ In this case, Dr. Bronston's report provided the following:

- Ms. Arriola was a 58 year old Latina female with a history of systemic lupus erythematosus, Sjogren Syndrome and status post splenectomy in 1992. She had been on chronic Prednisone and Plaquenil therapy at the time of her visit to the Sierra Medical Center Emergency Department in El Paso, Texas on 3/4/00 at 23:30. She was seen by Dr. Patricia Rawley [sic] at 00:30 on 3/5/00.

- She decompensated and arrested at about 03:42 on 3/5/00. She was resuscitated, placed on Dopamine for her hypotension and admitted to the ICU by Dr. Jesus Gomez. While in the ICU she arrested again at 05:18 and pronounced dead at 05:42.

- There were a number of violations of the standard of care in her care and treatment:

 Antibiotics were ordered but she never received them;

 She was not continuously monitored by a pulse oxymeter;

 There was no cardiac monitoring which should have been instituted at the beginning of her admission;

 This was a violation of the standard of care and of Sierra Medical Center's own Chest Pain protocol;

 Her vital signs needed to be monitored more frequently;

 She should have been administered IV Sodium Bicarbonate.

Dr. Bronston concluded that the patient needed to have been closely monitored regarding her vital signs, her acidosis, and her increasing hypoxia and restlessness. Timely antibiotics should have been administered and the acidosis and hypoxia should have been corrected. As we concluded in our review of the same expert report in *In re Tenet Hosps. Ltd.*, we again conclude that while Dr. Bronston's report sufficiently explained the applicable standard of care and the manner in which the doctor and hospital staff allegedly breached the standard of care, it wholly failed to address the causal relationship between the breach and Ms. Arriola's death. *See In re Tenet Hosps. Ltd.*, 116 S.W.3d at 826–27.

### Dr. Levine's Expert Report

■ In Dr. Levine's report, he stated the following pertinent information:

- I am familiar with the standard of care of an emergency medicine department when a patient presents with recent onset of chest pain.

- The fundamental purpose of emergency medicine is to stabilize the patient entering the emergency department and to assess their ongoing medical needs. Emergency department personnel should monitor vital signs and cardiac function and appropriately treat any symptoms indicating instability.

- I am familiar with the effects of failure to monitor and treat a patient that has pulmonary edema that may lead to cardiac arrest, such as in the case of Ms. Arriola.

- I am familiar with the effect of appropriate treatment for the incrementally

worsening symptoms of pulmonary edema that may in fact prevent cardiac arrest.

- According to the autopsy, Ms. Arriola died from pulmonary edema and cardiac arrhythmia. When Ms. Arriola arrived at Sierra Medical Center, she was triaged as a Level II and a Chest Pain Protocol was instituted. Ms. Arriola experienced a cardio-vascular collapse, which could have been prevented if she had been properly monitored by the emergency department personnel. This monitoring responsibility is based on the hospitals own chest pain protocol and the appropriate standard of medical care and includes repeat: cardiac monitoring, blood pressure, respiratory rate, pulse, temperature, oxygen saturation, and blood gases.

- Records show an absence of appropriate monitoring by the emergency department personnel after 1:10, the time the first blood gas results were received.

- It is more likely than not that if Ms. Arriola had been properly monitored, her pulmonary edema would have been detected and treated. If Ms. Arriola had been properly monitored her cardiac arrhythmia would have been detected and treated.

- It is probable that her vital signs changed gradually over the period of time between admission and the first cardiac arrest. Monitoring of Ms. Arriola's vitals at intervals over this time period could have created information that would had led to appropriate treatment and could have prevented her cardio-vascular collapse.

- It is more likely than not that Ms. Arriola did not die of an overwhelming blood infection as her autopsy does

not indicate the presence of this degree of infection.

■ An expert report need not include a full statement of the applicable standard of care and how it was breached, but a fair summary must set out what care was expected, but not given. See Palacios, 46 S.W.3d at 880. Here, Dr. Levine's report provided sufficient specific information about what Rowley should have done differently. The report succinctly states that the appropriate standard of care for emergency department personnel in this case was repeat monitoring of vital signs and cardiac function including, blood pressure, respiratory rate, pulse, temperature, oxygen saturation, and blood gases, and to appropriately treat any symptoms indicating instability. Dr. Levine indicated in his report that failure to monitor and treat Ms. Arriola's pulmonary edema led to her cardiac arrest. He also indicated that appropriate treatment for the incrementally worsening symptoms of pulmonary edema may in fact prevent cardiac arrest. According to Dr. Levine's report, the medical records showed an absence of appropriate monitoring by the emergency department personnel after 1:10 a.m. We conclude that Dr. Levine's report fairly summarized the alleged standard of care and how that standard of care was breached.

The report also provides a fair summary of Dr. Levine's opinions as to the causal relationship between Rowley's alleged breach and the harm claimed. The report states that if Ms. Arriola had been properly monitored, her pulmonary edema and cardiac arrhythmia would have been detected and treated. According to Dr. Levine, appropriate treatment for incrementally worsening symptoms of pulmonary edema may in fact prevent cardiac arrest. The report clearly indicates that if Ms. Arriola's vital signs had been regularly monitored between her admission and first

cardiac arrest, emergency department personnel could have had information which would have led to appropriate treatment and could have prevented her cardio-vascular collapse. The report states that the cardio-vascular collapse Ms. Arriola experienced could have been prevented if she had been properly monitored by the emergency department personnel. Although not eloquently stated, Dr. Levine's statements adequately address causation by indicating that if Ms. Arriola had been properly monitored, emergency department personnel could have detected and treated the worsening symptoms of Ms. Arriola's pulmonary edema, the life-threatening condition which was aggravated by the preventable conditions of cardio-vascular collapse and cardiac arrest and cause of her death. *See In re Tenet Hosps. Ltd.*, 116 S.W.3d at 826 (the words "cause" or "causation" do not have to be used as long as a substitute word, phrase, or reference is used); *see also Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex.2002)(expert need not express the causal relationship in terms of magic words such as "reasonable medical probability"). Therefore, we conclude Dr. Levine's report constitutes a good faith effort to comply with the statutory definition of an expert report. We conclude the trial court abused its discretion in dismissing the case. Appellant's Issue Two is sustained.

We reverse the trial court's order of dismissal and remand this cause to the trial court for further proceedings.