

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THN PHYSICIANS ASSOCIATION D/B/A EL PASO PERINATOLOGY AND MARIA D. VELAZQUEZ, M.D., | § § § | No. 08-15-00317-CV |
| Appellants, | § | Appeal from the |
| | § | 448th District Court |
| v. | § | of El Paso County, Texas |
| MARIO A. TISCARENO AND MICHELLE R. TISCARENO, INDIVIDUALLY AND AS NEXT FRIENDS FOR A.R.T., A MINOR, | § § § | (TC# 2014-DCV-2484) |
| Appellees. | | |

**O P I N I O N**

This appeal involves the sufficiency of a preliminary expert report in a medical malpractice case. Plaintiffs Mario and Michelle Tiscareno (individually and as next friends of their daughter, A.R.T.) filed a healthcare liability claim against Dr. Maria D. Velazquez and her health care practice, THN Physicians Association, claiming Dr. Velazquez's negligence injured Michelle Tiscareno. Dr. Velazquez[1] moved to dismiss the lawsuit, contending Plaintiffs' expert report failed to meet the requirements of the Texas Medical Liability Act. The trial court denied the motion, and Dr. Velazquez filed this interlocutory appeal. We conclude the expert report is

---

[1] Plaintiffs' claims against THN Healthcare Associates are strictly vicarious for the alleged negligence of Dr. Velazquez. For purposes of clarity, we refer to Dr. Velazquez and THN collectively as "Dr. Velazquez."

deficient, and reverse and remand for the trial court to consider giving Plaintiffs an opportunity to amend the report.

## BACKGROUND

We take the following background information from the petition and the expert report in issue, noting that the factual claims have not yet been proven.

Michelle Tiscareno was pregnant, and her baby was due in September 2012. She was under the care of Dr. Velazquez's partner, Dr. Frederick Harlass. On August 6, 2012, Tiscareno was admitted to Providence Memorial Hospital, and that same day, Dr. Harlass performed an emergency C-section. Dr. Harlass's operative notes stated that there was an "extremely foul odor upon opening of the uterus," and that Tiscareno's membranes were "very yellow." Tiscareno was discharged from the hospital on August 8. According to the expert report, no treatment for postpartum infection was provided to Tiscareno at the time of her discharge, even though she exhibited signs of postpartum infection, including a fever, tachycardia, and leukocytosis.

On August 13, Tiscareno went to Dr. Velazquez's office, complaining of "pain in the surgical area which was described as hard, red, and swollen," and was examined by Dr. Velazquez. According to the report, Tiscareno displayed signs of a "postpartum infection" during the visit, and Dr. Velazquez "attempted to drain the [surgical] area with a syringe, without success." The report contends that Dr. Velazquez thereafter sent Tiscareno home without providing her with "appropriate treatment including antibiotic therapy[.]"

The next day, while Tiscareno was at the hospital visiting her daughter, her post-operative wound ruptured "with significant fluid coming out." Tiscareno was immediately admitted to the hospital for a "post-operative infected wound." The expert report does not discuss what treatment

Tiscareno received after the rupture. The report instead merely indicates that after Tiscareno was admitted to the hospital, an infectious disease physician was consulted, who diagnosed Tiscareno with a "post-operative wound infection likely secondary to infected amniotic fluid."

### *The Lawsuit*

Plaintiffs sued Dr. Velazquez, Dr. Harlass, and their medical practice, THN Physicians Association.[2] The complaint alleged Tiscareno had a "serious infection" when Dr. Velazquez examined her on August 13 and that Dr. Velazquez failed to "properly evaluate and treat the infection."

### *The Expert Report*

As provided by statute, Plaintiffs were required to serve a complying preliminary expert report on Dr. Velazquez in support of their claims. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2016); *see also Tenet Hosps., Ltd. v. Garcia,* 462 S.W.3d 299, 302-03 (Tex.App. – El Paso 2015, no pet.). The report was authored by Lawrence S. Borow, M.D., a board-certified obstetrician-gynecologist, with 40 years of experience. Dr. Velazquez did not raise any issues concerning Dr. Borow's qualifications.

Based on his review of the medical records, Dr. Borow opined that the standard of care required Dr. Velazquez to provide antibiotic therapy to Tiscareno when she treated her on August 13, and that Dr. Velazquez breached that standard by "failing to provide appropriate treatment including antibiotic therapy when …Tiscareno presented with signs and symptoms of post-partum infection." On the issue of causation, Dr. Borrow stated that:

> Dr. Velasquez' [sic] failure to recognize signs and symptoms of postpartum infection and provide appropriate treatment resulted in progressive ongoing infection, and

---

[2] Dr. Harlass also filed a motion to dismiss, which the trial court denied. Dr. Harlass also appealed, which we considered separately in Appeal No. 08-15-00321-CV.

increased morbidity, requiring additional treatment. This breach of the standard of care was a substantial cause of harm to Mrs. Tiscareno. Had Dr. Velasquez [sic] complied with this standard of care, appropriate antibiotic therapy would have reduced the ongoing progressive infection and decreased Mrs. Tiscareno's suffering and morbidity.

### *Objections and Motion to Dismiss*

Dr. Velazquez filed objections to Dr. Borow's expert report, as well as a motion to dismiss, contending that the report was conclusory and therefore inadequate to meet the requirements of the TMLA. After hearing, the trial court denied the motion.

### DISCUSSION

In two issues, Dr. Velazquez contends the trial court abused its discretion in denying her motion to dismiss, claiming the report did not meet the standards imposed by the TMLA. In her first issue, Dr. Velazquez contends the report failed to adequately identify the standard of care and how Dr. Velazquez allegedly breached that standard. In her second issue, she claims the report failed to provide an adequate explanation how her alleged breach caused injury to Tiscareno. We sustain both issues.

### Standard of Review

The TMLA defines "expert report" to mean one that "provides a fair summary of the expert's opinions" regarding (1) the standard of care, (2) how the health care provider failed to meet that standard, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2016); *see also Scoresby v. Santillan,* 346 S.W.3d 546, 556 (Tex. 2011). A "fair summary of the expert's opinions" means that, at the least, the report must state more than mere conclusions, and must instead explain the basis of the expert's opinion so as to link the conclusions to the facts of the

4

case.  *See Garcia*, 462 S.W.3d at 304 (citing *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex. 2001)); *see also Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002).

Once an expert report is timely served and properly challenged, the trial court must grant a motion challenging the adequacy of an expert report if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report.  *Loaisiga v. Cerda,* 379 S.W.3d 248, 260 (Tex. 2012); *Garcia*, 462 S.W.3d at 304; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l).   To qualify as an objective good faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff questions, and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit.   *Scoresby,* 346 S.W.3d at 556 (citing *Palacios,* 46 S.W.3d at 879); *see also Certified EMS, Inc. v. Potts,* 392 S.W.3d 625, 630-31 (Tex. 2013).

While the claimant need not marshal all her evidence to support the expert's opinion, there must be sufficient facts within the report to meet the objectives of the statute.  *Garcia*, 462 S.W.3d at 304 (citing *Palacios,* 46 S.W.3d at 877).   In determining whether the report meets those requirements, the court should look no further than the report itself, because all of the information relevant to the inquiry must be contained within the document's four corners.  *Bowie Mem'l Hosp.,* 79 S.W.3d at 52 (citing *Palacios,* 46 S.W.3d at 878); *see also Baker v. Gomez*, 276 S.W.3d 1, 8 (Tex.App. – El Paso 2008, pet. denied).   The court should not have to fill in missing gaps in a report by drawing inferences or resorting to guess work.  *Garcia*, 462 S.W.3d at 304 (citing *Bowie Mem'l Hosp.,* 79 S.W.3d at 52); *see also Kanlic v. Meyer,* 320 S.W.3d 419, 422 (Tex.App. – El Paso 2010, pet. denied).

5

The trial court makes the decision whether an expert report is sufficient. Our role is to determine if the trial court abused its discretion. *Garcia*, 462 S.W.3d at 304 (citing *Tenet Hospitals Ltd. v. Boada,* 304 S.W.3d 528, 533 (Tex.App. – El Paso 2009, pet. denied)); *see also Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex. 2006). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Garcia,* 462 S.W.3d at 304; *see also Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003).

### Whether the Expert Report Adequately Described the Standard of Care and Breach

In her first issue, Dr. Velazquez contends Dr. Borow's report did not adequately address the standard of care and breach.

### *The Standard of Care and Breach*

"'Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently.'" *Gonzalez v. Padilla*, 485 S.W.3d 236, 248 (Tex.App. – El Paso 2016, no pet.) (quoting *Palacios,* 46 S.W.3d at 880); *see also Clapp v. Perez*, 394 S.W.3d 254, 259 (Tex.App. – El Paso 2012, no pet.). "'While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given.'" *Padilla*, 485 S.W.3d at 248 (quoting *Palacios,* 46 S.W.3d at 880). "'Mere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law.'" *Id.* (quoting *Regent Health Care Ctr. of El Paso, L.P. v. Wallace,* 271 S.W.3d 434, 441 (Tex.App. – El Paso 2008, no pet.)).

### *Analysis*

Dr. Velazquez first contends Dr. Borow's expert report did not adequately identify the

6

"signs and symptoms" of a postpartum infection that existed the time she examined Tiscareno on August 13, and failed to explain how a reasonable physician would have been able to diagnose a postpartum infection based on those signs and symptoms. Dr. Velazquez points out that in one portion of his report, Dr. Borow stated that Tiscareno presented during her office visit with "pain in the surgical area which was described as hard, red, and swollen," but never expressly stated that these were in fact signs and symptoms of a diagnosable postpartum infection requiring treatment. Dr. Velazquez acknowledges that elsewhere in his report, Dr. Borow stated that Tiscareno presented with signs and symptoms of a postpartum infection, but argues that the report failed to "connect these two assertions." Dr. Velazquez contends that in concluding the report was sufficient, the trial court was required to make an "impermissible inference" that Dr. Borow meant to say the described symptoms were in fact the type of symptoms that would have alerted a reasonable physician that Tiscareno was suffering from a diagnosable and treatable condition. We disagree.

Dr. Borow described within the four corners of his report the signs and symptoms that Tiscareno presented with on the day of her office visit (*i.e.*, that she had a pain in the surgical area that was "hard, red, and swollen"), and that Tiscareno presented with signs and symptoms of postpartum infection. The mere fact these statements are contained in different sections of the four-page report is not dispositive. These statements are easily linked—not by inference—but by simple reading comprehension. The report states that Tiscareno presented with one, and only one, set of symptoms and that she presented with signs and symptoms of postpartum infection. Although the report could have been better written in this regard, we conclude the report adequately conveyed Dr. Borow's opinion that Tiscareno's symptoms presented that day were

7

symptoms indicating postpartum infection. The report thus adequately linked the facts of the case to Dr. Borow's conclusion. *Garcia*, 462 S.W.3d at 304; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (the expert must "explain the basis of his statements to link his conclusions to the facts"). In sum, Dr. Borow's report was sufficient to adequately inform Dr. Velazquez of the specific conduct the plaintiffs questioned and to provide a basis for the trial court to conclude that the Plaintiffs' claims had merit.[3] *Scoresby,* 346 S.W.3d at 556; *see also Certified EMS, Inc.,* 392 S.W.3d at 630-31.

Dr. Velazquez also contends Dr. Borow's report nevertheless failed to adequately explain how Dr. Velazquez breached the standard of care. In particular, Dr. Velazquez contends the report was inadequate because it alleged only that Dr. Velazquez failed to provide "appropriate treatment including antibiotic therapy," without specifying the type of antibiotic treatment that should have been provided. According to Dr. Velazquez, Dr. Borow's general statement that antibiotic therapy was required did not provide a fair summary of "what care was expected, but not given," as required by the TMLA.[4]

---

[3] Dr. Borow also indicated that Tiscareno's surgical wound ruptured the next day and that she was later diagnosed with a postpartum infection. We disagree with Plaintiffs' assertion that these were also indications that Tiscareno was suffering from a diagnosable condition of postpartum infection on the day of her office visit. What Dr. Velazquez should have known on the day of the office visit can only be based on the signs and symptoms Tiscareno exhibited at the time of the treatment itself. *See Springer v. Johnson,* 280 S.W.3d 322, 333 (Tex.App. – Amarillo 2008, no pet.) (expert report must focus on the "clinical indicators" that would have prompted the treating physician to recognize the patient's condition and to initiate a particular treatment).

[4] In this regard, Dr. Velazquez misplaces her reliance on *Ibrahim v. Gilbride,* No. 14-09-00938-CV, 2010 WL 5064430 (Tex.App. – Houston [14th Dist.] Dec. 9, 2010, no pet.) (mem. op.). In *Ibrahim,* the court found the report failed to specify the medication that should have been prescribed. *Id.*, at *11. *Ibrahim*, however, was not based solely on the failure to describe the type of anti-seizure medication needed to treat the patient, but discussed numerous other weaknesses not at issue in the present case, such as the failure to identify the seizure disorder suffered by the plaintiff and its pathology and thus to show that medication was a necessary and potentially effective treatment. *Id.* Unlike the report in *Ibrahim,* Dr. Borow's report adequately identified the type of infection that Tiscareno was suffering from at the time of her discharge (*i.e.*, a postpartum infection), identified the pathology of the infection (*i.e.*, an untreated postpartum infection stemming from infected amniotic fluid), and expressly stated that appropriate antibiotic therapy would have been effective in preventing the ongoing infection. More importantly, *Ibrahim* dealt with a much more complex questions regarding the nature of ongoing seizures, whether those seizures could be treated

As explained in more detail below, we agree with Plaintiffs that an expert is not required in every case to describe the exact nature of the antibiotic treatment a defendant doctor should have provided to a patient suffering from an otherwise diagnosable and treatable infection. *See, e.g., Van Ness v. ETMC First Physicians,* 461 S.W.3d 140, 144 (Tex. 2015) (report was adequate where it referred only to the need to treat the patient's illness with "antibiotics"); *see also Lakshmikanth v. Leal,* No. 13-08-00389-CV, 2009 WL 140741, at *3 (Tex.App. – Corpus Christi Jan. 22, 2009, pet. denied) (mem. op.) (expressly rejecting the doctor's argument that the expert report was required to identify the type of antibiotics that should have been prescribed to prevent infection, noting that the report otherwise clearly informed the doctor of the specific conduct the plaintiff called into question, *i.e.*, his failure to order antibiotics for the patient at the time of his discharge). However, as discussed below, under the facts of the present case, the expert report was required to provide greater detail in order to adequately explain what was expected of Dr. Velazquez and how providing Tiscareno with antibiotic therapy during her office visit on August 13 would have prevented the injuries Tiscareno suffered the very next day on August 14.

**Whether the Expert Report Provided an Adequate Causation Opinion**

In her second issue, Dr. Velazquez contends Dr. Borow's opinion on causation was inadequate because it was conclusory and failed to set out a causal connection between Dr. Velazquez's alleged breach and Tiscareno's injuries. We agree.

*The Adequacy of a Causation Opinion*

An expert report must provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *Garcia,* 462 S.W.3d at 310 (citing *Bowie Memorial*

or controlled, and if so, what type of treatment would be effective to accomplish that task—a much more arcane topic than the typically less complex question whether an infection may be treated with appropriate antibiotics.

*Hospital,* 79 S.W.3d at 53). A court may not fill in missing gaps by drawing inferences or guessing what the expert likely meant or intended, nor may we infer causation. *Id.* (citing *Bowie Mem'l Hosp.,* 79 S.W.3d at 52); *see also Castillo v. August,* 248 S.W.3d 874, 883 (Tex.App. – El Paso 2008, no pet.) (causation cannot be inferred; it must be clearly stated). The report may not have an "analytical gap" or a "missing link" between the expert's allegation that the physician defendant breached the standard of care and the plaintiff's injuries. *See Clark v. HCA, Inc.,* 210 S.W.3d 1, 11 (Tex.App. – El Paso 2005, no pet.). The adequacy standard at the TMLA pleading stage is simple: we determine whether the expert report constitutes a "fair summary" of the issues at play, a summary that includes an articulable, complete, and plausible explanation of how the alleged breach led to the damages sustained. *See Garcia,* 462 S.W.3d at 308.

In medical malpractice cases, "plaintiffs are required to adduce evidence of a 'reasonable medical probability' or 'reasonable probability' that their injuries were caused by the negligence of one or more defendants, meaning simply that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Jelinek v. Casas,* 328 S.W.3d 526, 532-33 (Tex. 2010) (citing *Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 399–400 (Tex. 1993)). However, statements based on reasonable medical probability, without explanation and without tying the conclusions to the facts, are not sufficient. *Id.* at 539. Instead, "the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id.* at 539-40. "While a claimant is not required to conclusively prove her case through a preliminary expert report, the report may not merely state conclusions about any of the elements." *Castillo v. August,* 248 S.W.3d 874, 883 (Tex.App. – El Paso 2008, no pet.) (report was inadequate concerning the physician's failure to monitor a patient for signs of infection

10

following surgery, where the one-sentence statement on causation only generally alleged that the physician's actions were the cause of the patient's subsequent condition).

*Analysis*

Dr. Velazquez attacks Dr. Borow's causation opinion in two respects. First, Dr. Velazquez points out that the expert report states that Tiscareno was examined by Dr. Velazquez on August 13, and that her wound ruptured the next day on August 14. Dr. Velazquez contends the report "simply opines that one event (one day delay in diagnosis of infection) caused another (ongoing progressive infection and additional treatment) without explaining how and why."

We note that in one line of cases, the courts have generally concluded that expert reports are sufficient when the expert simply opines that the cause of the plaintiff's injuries resulted from the doctor's failure to provide appropriate antibiotic therapy, without any additional description of that therapy. *See, e.g., Van Ness,* 461 S.W.3d at 144 (report represented a good faith effort to comply with the requirements of the TMLA where it stated that the patient's illness was treatable with antibiotics, and that the continued treatment with antibiotics probably would have prevented the patient's death); *Nexion Health at Terrell Manor v. Taylor*, 294 S.W.3d 787, 796 (Tex.App. – Dallas 2009, no pet.) (expert report indicating that patient's condition was treatable with proper antibiotics and that the doctor's lack of appropriate treatment resulted in his death was sufficient to link the doctor's breach to the patient's death); *Romero v. Lieberman,* 232 S.W.3d 385, 391 (Tex.App. – Dallas 2007, no pet.) (holding sufficient an expert report stating that patient would have survived infection if given antibiotic treatment, and that the failure to start such treatment resulted in the patient's death); *Spitzer v. Berry,* 247 S.W.3d 747, 752 (Tex.App. – Tyler 2008, pet. denied) (expert report was adequate where it stated the doctor's breach caused the patient's

11

injuries due to his failure to "maintain antibiotic therapy").

On the other hand, in some instances, it is simply not clear from the expert report that antibiotic treatment would have been effective to treat the patient. In those cases, a more thorough medical explanation may be required. Timing can play an important role in determining whether the report must provide a more detailed explanation of how antibiotic therapy would have been effective in treating the patient and in preventing the injuries resulting from any failure to treat.

For example, in *Jelinek,* the Court concluded that an expert report stating that a relatively short lapse in providing antibiotics to a hospitalized patient prolonged the patient's hospital stay and increased his pain and suffering, was no more than a "bare assertion" that failed to present any "explanation of how the breach caused the injury." 328 S.W.3d at 540; *see also Ngo v. Lewis,* No. 09-10-00140-CV, 2010 WL 3518225, at *3 (Tex.App. – Beaumont Sept. 9, 2010, no pet.) (mem. op.) (report failed to explain how alleged 25-minute delay in properly treating an infant who had been exposed to infection during delivery would have changed the infant's outcome or affected his chance of survival).

Further, in cases where a patient presents with a pre-existing condition, such as an infectious disease that has been brewing for some time, the expert report must provide an adequate explanation regarding how any delay in providing treatment was a substantial factor in causing harm the patient. *See, e.g., Costello v. Christus Santa Rosa Health Care Corp.,* 141 S.W.3d 245, 249 (Tex.App. – San Antonio 2004, no pet.) (expert report claiming that patient would have survived but for the delays in diagnosing and treating her was insufficient where it failed to describe "what treatment would have or could have been available, that the patient was a candidate

12

for the unknown treatment, or that the unknown treatment could have or would have been effective"); *see also Jones v. King,* 255 S.W.3d 156, 160 (Tex.App. – San Antonio 2008, pet. denied) (expert report was inadequate where it failed to explain how a 48-hour delay in diagnosis caused the patient's alleged injuries).

*Ortiz v. Patterson*, 378 S.W.3d 667, 673 (Tex.App. – Dallas 2012, no pet.), provides a good example. In *Ortiz*, the patient presented at a hospital with various symptoms, including fever and a high heart rate, which the expert report stated should have alerted the treating physician that the patient was "very ill" and in need of a chest x-ray and a pulse oximetry assessment. The report concluded that the doctor's failures to perform the appropriate tests, to make the correct diagnosis, and to refer the patient for hospital admission, did not meet the standard of care and contributed to the patient's "premature death" from pneumonia the next day. *Id.* The court concluded the report was inadequate to explain how the alleged breach actually caused the patient's death because it failed to explain how performing the suggested tests would have altered the patient's outcome and prevented the patient from dying the next day. *Id.* at 674.

As in *Ortiz*, Dr. Borow's expert report failed to adequately discuss how placing Tiscareno on "appropriate antibiotic therapy" would have prevented her wound from rupturing the next day. In particular, Dr. Borow stated that the infection had been brewing for several days after Tiscareno was discharged from the hospital, while under the care of another doctor. The report however failed to provide any medical explanation regarding the rate that Tiscareno's infection might progress, the type of antibiotics that may be required, or any necessary method of administration (*i.e.,* whether they needed to be administered orally, by injection or I.V. drip, or only after hospital admission), and why this would have prevented the wound rupture that occurred less than 24 hours

13

later.  Consequently, in upholding the report, the trial court was required to make an impermissible inference that there was an antibiotic treatment available that would have prevented Tiscareno's wound from rupturing the next day.

The level of detail required in an expert report must be determined on a case-by-case basis, and will necessarily vary depending, in part, on the complexity of the case.  *See, e.g., Mendez-Martinez v. Carmona,* ___ S.W.3d __, 2016 WL 1613422, at *5 (Tex.App. – El Paso April 22, 2016, no pet.).  An expert may not be required in every case to provide a detailed description of the biological process by which a disease progresses or the process by which a particular medication might stop that progress.  However, as here, when it is unclear from the expert report how a patient with a pre-existing condition would have had a better outcome if there had not been a short delay in diagnosis and treatment, some medical explanation is required to link the delay to the patient's outcome.  *See Bowie Mem'l Hosp.*, 79 S.W.3d at 50-51 (report was too conclusory to meet the requirements of an adequate report where it stated only that if a physician had properly read the x-rays of a patient's foot, which was ultimately found to have been fractured following an accident, and had acted upon those findings, the patient "would have had the possibility of a better outcome"); *Tenet Hosps. Ltd. v. Love,* 347 S.W.3d 743, 755-56 (Tex.App. – El Paso 2011, no pet.) (expert report that made "broad" and "conclusory" allegation that a patient who died of cardiac arrest "would more likely than not be alive today" if the defendant hospital had consulted a pulmonologist during a plaintiff's hospital stay, was inadequate, where it provided no "medical explanation" of how consulting with a pulmonologist would have resulted in a different outcome).  While no magic words or particular terms or phrases are required, the converse is also true:  merely stating there was a reasonable probability that a better outcome

would have occurred is insufficient to show causation. *Costello,* 141 S.W.3d at 249 (citing *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711–12 (Tex. 1997)).

Plaintiffs cite to numerous cases to support their argument that there was no need for Dr. Borow's causation opinion to be more specific, and that it was sufficient to simply state that appropriate antibiotic treatment would have avoided the complications allegedly resulting from the delay in treatment. All of those cases, however, involved the physician's failure to monitor or to test the patient.[5] The expert reports were found to be adequate because the experts opined that the patient would have had a better outcome if the doctor had properly monitored the patient or if proper diagnostic tests and evaluations had been timely performed, and that the failure to perform such tests led to delays in diagnosing serious medical conditions, which could have been successfully treated if found earlier. In all of those cases, the focus was on the doctor's failure to perform diagnostic tests or to properly evaluate the patient, not on what type of treatment should have been given. In contrast, Plaintiffs' sole claim in the present case is that Dr. Velazquez did not provide appropriate antibiotic therapy to treat Tiscareno's infection at the time of her office

---

[5] *See, e.g., Bustillos v. Rowley*, 225 S.W.3d 122, 130-31 (Tex.App. – El Paso 2005, pet. denied) (failure-to-monitor case where the expert report was found to be adequate on causation based on expert's statements that proper monitoring would have detected the patient's pulmonary edema, which in turn that could have been properly treated if found in time); *Adeyemi v. Guerrero,* 329 S.W.3d 241, 245 (Tex.App. – Dallas 2010, no pet.) (expert report provided an adequate causation opinion where it stated that ordering a CT Scan or a neurological evaluation to determine the source of the patient's persistent headaches following a fall in the hospital would have led to detection of patient's hematoma, and that if given appropriate treatment three days earlier, she could have avoided the multiple complications that she ultimately suffered); *Moore v. Sutherland*, 107 S.W.3d 786, 790 (Tex.App. – Texarkana 2003, pet. denied) (expert report provided an adequate causation opinion where it stated that ordering a post-surgical evaluation to rule out bile peritonitis during the four days that the patient was in the hospital would have prevented her death three days after her discharge, despite any discussion of what type of treatment could have been given to the patient in the interim to prevent the patient's death); *see also Sides v. Guevara*, 247 S.W.3d 293, 301-02 (Tex.App. – El Paso 2007, no pet.) (expert report provided an adequate causation opinion where it stated, among other things, that the defendant doctor failed to "appreciate and diagnose" the patient's ongoing toe problem, which expert believed led to the patient's post-surgical infection, despite experts failure to explain precisely what type of treatment could have been given to the patient to avoid the infection).

15

visit.[6]  As such, Dr. Borow's report was required to supply the direct missing link, *i.e.*, how a one-day failure to treat a pre-existing infection with antibiotics led to Tiscareno's injuries.

Given the timing of Tiscareno's office visit, which was at least five days after her infection began, and the fact that Tiscareno's wound ruptured the very next day after her office visit, we conclude it was incumbent upon Dr. Borow to provide a more detailed medical explanation to support his conclusion that Dr. Velazquez failed to meet the standard of care and that her failure to provide appropriate antibiotic treatment caused Tiscareno's alleged injuries.

Dr. Velazquez also criticizes Dr. Borow's report for failing to describe the "additional treatment" Tiscareno was forced to endure because of Dr. Velazquez's failure to provide appropriate antibiotic treatment on the day of her office visit.  Dr. Velazquez provides no authority for the proposition that an expert must provide a detailed description of the nature of the treatment a patient received as the result of her alleged injuries, and we know of none.  In any event, although his report is not a model of clarity, Dr. Borow did make a good faith effort to explain the nature of the injuries suffered by Tiscareno as the result of Dr. Velazquez's alleged failure to treat Tiscareno with appropriate antibiotic therapy, contending that this alleged failure led to an ongoing infection, which ultimately resulted in Tiscareno's surgical wound rupturing on August 14, and which required her admission to the hospital, as well as a consultation with an infectious disease physician.  This is sufficient to pass the hurdle of providing fair notice of the general nature of the injuries Tiscareno believes resulted from Dr. Velazquez's allegedly negligent acts or omissions.  *See Palacios,* 46 S.W.3d at 879 (expert report need not be formal and its information need not meet the evidentiary requirements of a summary judgment proceeding or at

---

[6] We note that in his report Dr. Borow appears to believe that Dr. Velazquez did in fact diagnose Tiscareno with an infection, as she attempted to drain the surgical site during the office visit, but that she simply provided the wrong treatment at that time.

trial); *see also Spitzer,* 247 S.W.3d at 750 (providing that a "'fair summary'" in an expert report is "'something less than a full statement' of the applicable standard of care, how it was breached, and how that breach caused the injury").   At this early stage in the proceedings, a plaintiff "need not drill down into every possible detail in every case in order to survive dismissal[.]" *Mendez-Martinez,* 2016 WL 1613422, at *6.

## Remand for Opportunity to Amend

We conclude the trial court abused its discretion in denying Dr. Velazquez's motion to dismiss.   However, because Plaintiffs have not been given an opportunity to cure any deficiencies in Dr. Borow's report, and because their report is not so deficient as to constitute no report at all, we remand for the trial court to consider granting a thirty-day extension to allow Plaintiffs to attempt to cure the deficiencies in the report with regard to their claims.[7]   *See Tenet Hosps. Ltd. v. De La Riva,* 351 S.W.3d 398, 407-08 (Tex.App. – El Paso 2011, no pet.) (upon finding that trial court abused its discretion in denying the defendant doctor's motion to dismiss, proper course of action was to remand the case to the trial court to consider whether the deficiencies could be cured, and therefore, whether to grant an extension of time) (citing *Leland v. Brandal,* 257 S.W.3d 204, 207–08 (Tex. 2008)); *see also Lewis v. Funderburk,* 253 S.W.3d 204, 208 (Tex. 2008) (stating that a deficient report may be cured by amending the report or by serving a new report from a separate expert that cures the deficiencies in the previously filed report).   In doing so, we note that the trial court "should be lenient in granting thirty-day extensions and must do so if deficiencies in an expert report can be cured within the thirty-day period."   *Tenet Hosps. Ltd. v. Bernal,* 482 S.W.3d 165, 176 (Tex.App. – El Paso 2015, no pet.) (citing *Scoresby*, 346 S.W.3d at 554).

---

[7] When a timely-filed expert report is deficient, the trial court may grant one thirty-day extension to cure the deficiencies, unless it is objectively shown that the report was not filed in good faith, at which point, dismissal is required.   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

17

**CONCLUSION**

We reverse the trial court's order denying Dr. Velazquez's motion to dismiss and remand for further proceedings consistent with this opinion.

STEVEN L. HUGHES, Justice

August 17, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

18