COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ELENA MARIA APODACA, | § | |
| | | No. 08-06-00226-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 41st Judicial District Court |
| | § | |
| WILLIAM THAD MILLER, M.D., | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2001-4647) |
| | § | |

**O P I N I O N**

This appeal arises from an order granting Dr. William T. Miller's motion to dismiss, for failure to provide a sufficient medical expert report pursuant to former TEX.REV.CIV.STAT.ANN. art. 4590i. Ms. Elena Maria Apodaca raises two issues for review. In Issue One, Ms. Apodaca asserts that Dr. Miller waived his right to dismissal due to an inadequate expert report by waiting three years to file his motion. In Issue Two, she contends the trial court abused its discretion by determining the report was deficient.

On December 15, 1999, Ms. Apodaca underwent cosmetic surgery performed by Dr. Miller. Dr. Miller performed several procedures, including a rhytidectomy (facelift) and a bilateral upper and lower lid blepharoplasty with removal of the corrugator muscle (removal of fatty or excess tissue around the eyes).

On January, 7, 2000, Ms. Apodaca entered the emergency room at Sierra Medical Center in El Paso with complaints of pain and blurry vision. She was diagnosed with vertical diplopia, ptosis of the upper eyelid, and vertical strabismus. A malfunction in one of the muscles which

controls the movement in Ms. Apodaca's right eye caused the eye to consistently deviate upward, while her left eye continued to function normally.  Because her eyes were unable to be properly directed at an object at the same time, Ms. Apodaca suffered from blurry and double vision. Ultimately, Ms. Apodaca was treated by Dr. Carlos Vasquez, an expert in eye muscle balance. Dr. Vasquez performed a left inferior rectus muscle recession on September 13, 2000, to repair the damaged muscle and control the deviation of Ms. Apodaca's right eye.

Ms. Apodaca filed her original petition in this lawsuit on December 14, 2001.[1]  In part, she alleged that her double vision was caused by Dr. Miller's medical negligence during her December 1999 surgery.  In accordance with the requirements of former Article 4590i, Ms. Apodaca filed a medical expert report by plastic surgeon, Dr. Mark Young on June 11, 2002. *See* former TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d)(repealed 2003).  Over the next three years, the parties proceeded with discovery, entered into several agreed orders and took depositions.  On May 25, 2005, Dr. Miller filed a motion to dismiss the case pursuant to former Article 4590i, sec. 13.01, challenging the sufficiency of Dr. Young's expert report.  The hearing on the motion was continued until August 7, 2006.  During the hearing, Ms. Apodaca's attorney argued the report was sufficient to meet the statutory requirements, and that Dr. Miller's delay in filing his motion while actively participating in the case constituted an implicit waiver of his

---

[1] In 2003, the Legislature replaced Article 4590i with Civil Practice and Remedies Code Chapter 74, effective September 1, 2003.  *See* (Acts of 1977, 65th Leg., R.S., ch. 817, 1977 TEX.GEN.LAWS 2039, 2039-2053, amended by Acts of 1993, 73rd Leg., R.S., ch. 625, § 3, 1993 TEX.GEN.LAWS 2347, 2347-49, amended by Acts of 1995, 74th Leg., R.S., ch. 140, § 1, 1995 TEX.GEN.LAWS 985, 985-989)(Former TEX.REV.CIV.STAT.ANN. art. 4590i, §§ 1.01-16.02, "the Medical Liability and Insurance Improvement Act"), repealed by Acts of 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 TEX.GEN.LAWS 847, 884 (current version at TEX.CIV.PRAC.&REM.CODE ANN. § 74.001 et seq. (Vernon Supp. 2008)(eff. Sept. 1, 2003).  As this case was filed prior to the effective date of Chapter 74, we will refer to Article 4590i throughout this opinion.

right to dismissal. The trial court entered its order dismissing the case on August 7, 2006.

*Standard of Review*

We review the trial court's decision to grant or deny a motion to dismiss for an abuse of discretion. *American Transitional Care Cntrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see also Spinks v. Brown*, 211 S.W.3d 374, 379 (Tex.App.--San Antonio 2006, no pet.)(trial court abused its discretion by granting defendant physician's motion to dismiss). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, or acts in an arbitrary or unreasonable manner. *Palafox v. Silvey*, 247 S.W.3d 310, 314 (Tex.App.-- El Paso 2007, no pet.). We may not substitute our own judgment for that of the trial court when reviewing a matter committed to the trial court's discretion. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992).

*Waiver*

In Issue One, Ms. Apodaca contends the trial court erred by dismissing the case because Dr. Miller implicitly waived his right to dismissal due to an inadequate expert report. She asserts that by participating in discovery, requesting a discovery control plan, and taking part in trial preparation, Dr. Miller took a position inconsistent with his right to end a frivolous suit, thereby waiving his right to dismissal.

Section 13.01 of former Article 4590i requires a plaintiff to provide each defending physician or heath care provider with one or more expert reports, including a curriculum vitae for each expert listed in the report, within 180 days of filing a heath care liability claim. Former TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d). Where an expert report is tendered, the defendant may challenge the adequacy of the report. *See id*. at § 13.01(*l*); *Bustillos v. Rowley*,

225 S.W.3d 122, 127 (Tex.App.--El Paso 2005, pet. denied). The trial court is authorized to grant a motion to dismiss, "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section." *Bustillos*, 225 S.W.3d at 127, *quoting Palacios*, 46 S.W.3d at 878-79.

Section 13.01 imposed no statutory deadline for a defendant physician or health care provider to file a motion to dismiss.[2] *Id*. However, a defendant may waive the right to dismissal if the defendant's silence or inaction is inconsistent with the intent to rely upon that right. *Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003). The mere fact that a defendant waits to file a motion to dismiss is insufficient to establish waiver. *Id*. at 157. Waiver is largely a matter of intent. *Id*. For an implied waiver to be found based on a party's actions, intent must be clearly demonstrated by the surrounding circumstances. *Id*. at 156. There is no waiver of a right if the party sought to be charged with waiver says or does nothing which is inconsistent with an intent to rely upon such right. *Id*.

Implicit waiver is only inferred by Texas courts in extreme circumstances. *See e.g.*, *Jernigan*, 111 S.W.3d at 157 ("For example, if the defendant fails to object to the report's inadequacy until after the case is disposed of on other grounds, waiver may be implied."); *In re Sheppard*, 197 S.W.3d 798, 802 (Tex.App.--El Paso 2006, orig. proceeding)(by announcing ready for trial following completion of discovery, defendant physician waived right to dismissal based on sufficiency of expert report); *Spinks*, 211 S.W.3d at 378-79 (dismissal based on

_____

[2] Under the current version of the statute, a defendant physician or health care provider must file and serve any objection to the sufficiency of an expert report no later than twenty-one days after being served with the report. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a)(Vernon Supp. 2008). Absent a timely objection, the defendant waives all objections. *See id*.

physician's objection to expert report constituted an abuse of discretion where defendant waited until after trial to file motion to dismiss). The activities pointed to as evidence of Dr. Miller's intent to waive do not rise to the level of an implicit waiver. Rather, these types of activities represent an intent to investigate the merits of the case primarily by participation in discovery. While a three-year delay in filing a motion to dismiss may result in the defendant's forfeiture of the cost-reducing benefits of the statute, it is not a "clear demonstration" of an intent to waive the statutory right to dismissal. *See Jernigan*, 111 S.W.3d at 157; *Kidd v. Brenham State Sch. Texas Dept. Of Mental Health and Mental Retardation*, 93 S.W.3d 204, 208 (Tex.App.--Houston [14th Dist.] 2002, pet. denied). Issue One is overruled.

*Expert Report Sufficiency*

In Issue Two, Ms. Apodaca asserts the trial court abused its discretion by determining Dr. Young's expert report did not constitute a good faith effort to comply with the requirements of Section 13.01(*l*). In response, Dr. Miller argues the trial court's determination that the report was insufficient was not an abuse of discretion because Dr. Young's report failed to identify the applicable standard of care, failed to identify the purported breach, and provided only conclusory statements regarding causation while failing to link the alleged breach to Ms. Apodaca's injuries.

A timely filed expert report is subject to challenge by the defendant by a motion to dismiss challenging the report's sufficiency. *See* former TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d), (e) & (*l*). The trial court shall grant the motion to dismiss only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See* former TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(*l*). An "expert report," is a written report by a qualified expert, and provides a fair

-5-

summary of the expert's opinions as of the date of the report regarding: (1) the applicable standards of care; (2) the manner in which the care rendered by the physician or health care provider failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* former TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(r)(6).

Although a report need not marshal all the plaintiff's proof, it must include expert opinions on the three elements identified in the statute. *Palacios*, 46 S.W.3d at 878-79. In detailing these elements, the report must provide enough information to fulfill two purposes: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Id*. at 879. All of the relevant information must be contained within the four corners of the report. *Id*. at 878. If a report omits any of the statutory elements it cannot constitute a good faith effort. *Id*. at 879.

The standard of care for a physician is what an ordinary prudent physician would do under the same or similar circumstances. *Moore v. Sutherland*, 107 S.W.3d 786, 789 (Tex.App.--Texarkana 2003, pet. denied). At a minimum, the report must provide a "fair summary" of the standard of care, identifying what care was expected but not given. *Palacios*, 46 S.W.3d at 880; *Bustillos*, 225 S.W.3d at 130. Identification of the standard of care is critical to defining the alleged breach. *Sutherland*, 107 S.W.3d at 789. That is, whether the defendant breached his duty to the patient cannot be determined without an explanation about what the defendant should have done differently. *Sutherland*, 107 S.W.3d at 790. On the issue of causation, the report must contain more than conclusory insights about the alleged injury. *Id*. The expert must explain the

-6-

basis of his causal conclusions by linking those conclusions to the facts of the case. *Bowie*

*Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

Dr. Miller's motion to dismiss included challenges to the sufficiency of the report on all three statutory elements. In pertinent part, Dr. Young's report provides the following:

> It is my opinion that Ms. Apodaca suffered from strabismus as a result of surgery performed by Dr. Miller on December 15, 1999. In order to have normal vision using both eyes, both eyes must be directed at an object at the same time. Strabismus occurs when there is a deviation from this perfect alignment so that one or both eyes cannot be directed at the same object at the same time. Ms. Apodaca's strabismus (right hypertropia) involved a deviation of her right eye upward. Ms. Apodaca's strabismus caused her double vision.
>
> It is my opinion that Ms. Apodaca suffered an injury to the superior oblique muscle during blepharoplasty by Dr. Miller on December 15, 1999. The superior rectus muscle elevates the eye and the superior oblique muscle depresses the eye. If there is an injury to the superior oblique muscle, this may weaken the muscle and cause hypertropia or deviation of one eye upward. During surgery on the right upper lid, while removing fat from the medial side of the eye, Dr. Miller injured the superior oblique muscle. This injury to Ms. Apodaca's superior oblique muscle in her right eye weakened the muscle and caused her right eye to deviate upward, resulting in double vision. The accepted standard of care of an ordinary and reasonable plastic surgeon performing upper eyelid surgery under the same or similar circumstances as the surgery performed by Dr. Miller on Ms. Apodaca on December 15, 1999, is to avoid trauma or injury to the superior oblique muscle while removing fat from the medical side. This type of trauma during surgery is preventable and is not a common surgical risk. It is my opinion that Dr. Miller breached the accepted standard of care by injuring the superior oblique muscle during surgery on December 15, 1999. It is my opinion that the breach of the accepted standard of care by Dr. Miller was a cause of injury and damages to Ms. Apodaca, including double vision, the need for corrective surgery, and physical impairment.

This report satisfies the statutory requirements. Dr. Young identifies the factual basis of

Ms. Apodaca's injury (i.e., injury to the superior oblique muscle in her right eye) and explains

that this type of injury leads to deviation of the eye resulting in double vision. He further opines

that this is the type of injury that Ms. Apodaca has suffered. The report continues by explaining

-7-

that the standard of care during this type of cosmetic surgery includes avoiding trauma to this muscle. The report clearly states that, in Dr. Young's opinion, Dr. Miller breached the standard of care by traumatizing the superior oblique muscle during surgery. The reports concludes by linking Ms. Apodaca's complaints of double vision with injury to the muscle.

This report provides a fair summary of the standard of care, the alleged breach and causal connection between that breach, and Ms. Apodaca's alleged injuries. The report also satisfies the dual purposes of the statute. Therefore, the trial court abused its discretion by granting Dr. Miller's motion to dismiss. Issue Two is sustained.

Having determined that the trial court abused its discretion by granting Appellee's motion to dismiss, we reverse the order of dismissal and remand this cause to the trial court for further proceedings.


August 7, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)