

# NUMBER 13-11-00780-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RIO GRANDE VALLEY VEIN CLINIC, P.A.,
D/B/A RGV VEIN LASER & AESTHETIC CLINIC,                      Appellant,

v.

YVETTE GUERRERO,                                              Appellee.

### On appeal from the 138th District Court
### of Cameron County, Texas.

# DISSENTING MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Perkes
### Dissenting Memorandum Opinion by Justice Perkes

I respectfully dissent from the majority's opinion because the laser hair removal in this case constituted health care treatment. Therefore, under chapter 74 of the Texas Civil Practice and Remedies Code, Yvette Guerrero was required to timely file an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011).

1

When a person receives a treatment from a physician in a physician's office, as opposed to visiting a spa or nonmedical setting, there is a heightened expectation that the person will receive a medically sound benefit and not be harmed. Once a physician-patient relationship is established, as in this case, the physician is held to a higher standard of care than a cosmetologist or an ordinary person. An absurd result would occur if a physician is left to guess whether or not a given procedure to be performed within the scope of his medical practice is health care under the Medical Liability Act or not.[1]

A health care liability claim consists of three elements: (1) a physician or a health care provider must be the defendant; (2) the suit must be about the patient's treatment, lack of treatment, or some other claimed departure from accepted standards of medical care or health care or safety or professional or administrative services directly related to health care; and (3) the defendant's act, omission, or other departure must proximately cause the patient's injury or death, whether the claim or cause of action sounds in tort or contract. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

The dispute here concerns the second element, that is, whether the physician's alleged failure to safely provide laser hair removal was a deviation from an accepted standard of medical care. Even under the medical definition of "treatment" this Court

---

[1] The Supreme Court of Texas has recently requested full briefing on the merits in a laser hair removal case. *Bioderm Skin Care, LLC v. Sok*, Case No. 11-0773 (Tex. June 22, 2012)(requesting briefing on the merits in a case in which the court of appeals held laser removal of unwanted hair was not "health care" for purposes of the medical malpractice statute). The Supreme Court earlier granted a petition for review in a laser removal case, but the parties settled prior to determination. *Ghazali v. Brown*, Case No. 10-0232, 2011 Tex. LEXIS 119 (Tex. Feb 8, 2011)(petition for review granted, but dismissed by agreement)(granting petition for review in a case in which the court of appeals held laser hair removal is not medical care and the claim is not a health care liability claim under the Medical Liability Act).

adopted in *Tesoro*, Guerrero received medical treatment because treatment includes prevention of injury, and a person receiving laser hair removal treatment from a physician within the context of his medical practice would reasonably expect the physician to perform the procedure in a manner as to prevent injury. *See Tesoro v. Alvarez*, 281 S.W.3d 654, 659 (Tex. App.—Corpus Christi 2009, no pet.) (applying the definition of "treatment" found in Mosby's Medical Dictionary).

Guerrero's petition and the record in this case are silent regarding whether Guerrero sought the laser hair removal treatment solely for cosmetic reasons or for a condition such as hirsutism or hypertrichosis. *See Davis v. Am. Home Prods., Corp.*, 02-0942, 844 So.2d 242, 248 (La. App. 4 Cir. 3/26/03) (listing, in the context of a class-action lawsuit against a manufacturer, hirsutism and hypertrichosis as potential side effects and including description of hypertrichosis as excessive body and facial hair in a masculine pattern). The trial court in its remarks at the hearing on RGV Vein Clinic's motion to dismiss, clearly viewed the hair removal as cosmetic in nature, and neither party corrected this assumption. However, even if Guerrero sought hair removal solely for cosmetic reasons, that does not necessarily compel the conclusion that her claim is not a health care liability claim because elective or cosmetic procedures have been treated as and held to be health care. *See e.g.*, *Apodaca v. Miller*, 281 S.W.3d 123, 128–29 (Tex. App.—El Paso 2008, no pet.) (treating a facelift and cosmetic removal of fatty, excess tissue around the eyes as health care subject to the expert-report requirement); *see also Key v. Viera*, No. 01-07-00587-CV, 2009 WL 350602, at *8 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.) (holding liposuction and a facelift performed by a cosmetic surgeon were health care).

While the majority is correct that an individual does not have to be a physician to perform laser hair removal, it is incorrect to say that laser hair removal can be performed without the supervision of a physician. Rather, the new statute requires, *inter alia*, that all laser hair removal facilities are required to have a written contract with a consulting physician to "establish proper protocols for the services provided at the facility" and to "audit the laser hair removal facility's protocols and operations." *See* TEX. HEALTH & SAFETY CODE ANN. § 401.519(a) (West 2010). In addition, the consulting physician must be available for emergency consultations and appointments relating to care. *Id.* § 401.519(c). While section 401.519 was not effective until September 1, 2009, after the events that form the basis of Guerrero's lawsuit, it supports the conclusion that a physician performing laser hair removal should demonstrate greater expertise and is held to a higher standard of care than a non-physician performing the same procedure.

I am cognizant that this Court handed down *Tesoro v. Alvarez*, holding that with respect to laser hair removal, no expert report is required. *Tesoro*, 281 S.W.3d at 665–66. *Tesoro*, however, is factually distinguishable, and at least three of the factors this Court found significant in *Tesoro* are not present in this case.

First, *Tesoro*, did not involve a doctor-patient relationship. *See id.* at 665. This Court gave considerable weight to the fact that Dr. Tesoro neither supervised nor participated in the laser hair removal at issue, writing that "no doctor-patient relationship would be found to exist between Alvarez and Dr. Tesoro." *Id.* By contrast, it is undisputed in this case that a physician performed the laser hair removal that forms the basis of Guerrero's lawsuit.

4

Second, in *Tesoro*, this Court found it significant that the plaintiff only pleaded a vicarious-liability claim against Dr. Tesoro as a general partner in the business whose agent, Blount, actually performed the hair removal. *Id.* at 656, 665. The vicarious-liability claim did not assert that "Dr. Tesoro failed to provide proper health care treatment." *Id.* at 665. In this case, as in the *Kanase* case, Guerrero's claim is premised on a theory of direct liability for failure to meet the negligence standard of care, rather than vicarious liability under agency principles. *See Kanase v. Dodson*, 303 S.W.3d 846, 849 n.2 (Tex. App.—Amarillo 2009, no pet.) (distinguishing *Tesoro* and concluding direct negligence claims against the doctor and laser center pertaining to laser hair removal performed by employees were within the scope of the Medical Liability Act); *see also Stanford v. Cannon*, No. 06-11-00011-CV, 2011 WL 2518856, at *5 (Tex. App.—Texarkana June 23, 2011, no pet.) (mem. op.) (distinguishing *Tesoro*, and concluding that although the plaintiff pleaded his claim against a physician under a vicarious-liability theory, the claim was one for health care liability when physician was directly involved in supervision of laser hair removal from plaintiff's genitalia and file contained medical documentation).

Third, in *Tesoro*, the record did not include health care records and as a result this Court found Tesoro's argument based on the existence of health care records unsupported. *See* 281 S.W.3d at 659–60. By contrast, while the record does not contain the actual health care records, it is undisputed that (1) RGV Vein Clinic created a medical chart and medical records for Guerrero; (2) Guerrero was considered to be a patient; and (3) Guerrero signed a patient data sheet, an informed-consent form stating the risks and benefits of the treatment, and a Health Insurance Portability and

5

Accountability Act ("HIPAA") information and consent form. This documentation supports the conclusion that Guerrero's claim is a health care liability claim. *See Stanford*, 2011 WL 2518856, at *5.

For these reasons, this Court should reverse the trial court's order denying RGV Vein Clinic's motion to dismiss, render judgment that Guerrero's claims be dismissed with prejudice, and remand the case to the trial court solely on the issue of the appropriate award of attorney's fees and costs incurred by appellants in relation to this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see also Kanase*, 303 S.W.3d at 850.

_____<br>
Gregory T. Perkes<br>
Justice

Delivered and filed the
30th day of August, 2012.