

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BERNARDO L. GONZALEZ, | § | No. 08-19-00004-CV |
| Appellant, | § | Appeal from the |
| v. | § | 346th District Court |
| MOMENTUM DESIGN & CONSTRUCTION, INC., | § | of El Paso County, Texas |
| | § | (TC# 2018-DCV-3826) |
| Appellee. | | |

**O P I N I O N**

This case arises from claims for personal injuries to Appellant Bernardo L. Gonzalez, which he alleges were caused by Momentum Design & Construction, Inc. ("Momentum"). Gonzalez's claims are based on the alleged negligent design, construction, and installation of a fiberglass cover at his place of work. Momentum sought and obtained dismissal of Gonzalez's claims on the grounds that Gonzalez failed to attach a certificate of merit to his petition, pursuant to Section 150.002 of the Texas Civil Practice and Remedies Code ("Section 150.002"). In four issues, Gonzalez asserts the trial court erred in dismissing his claims with prejudice. We reverse and remand.

**BACKGROUND**

On September 10, 2014, Gonzalez fell through a fiberglass cover while he was working for El Paso Electric at one of their substation houses, causing him to suffer severe injuries. In April

2016, he filed suit against Jordan Foster Construction, LLC, the company who had constructed the substation house. The following month, Gonzalez filed his First Amended Petition, nonsuiting Jordan Foster Construction, LLC, and asserting claims instead against Karlsruher, Inc. d/b/a CSA Constructors ("CSAC"), who he alleged designed and built the fiberglass cover in question. Gonzalez alleged that CSAC was negligent in a number of ways, including that it negligently designed, constructed, and installed the fiberglass cover without necessary support.

In July 2016, in response to one of Gonzalez's discovery requests, CSAC identified Momentum as a potential party. In response to another discovery request, CSAC asserted that Momentum designed the fiberglass cover and that its design was defective. On July 28, 2016, Gonzalez filed his Second Amended Petition, in which he added Momentum as a defendant and asserted claims against it for damages arising from its alleged negligent design and negligent engineering of the fiberglass cover. Gonzalez did not file a Section 150.002 certificate of merit with this amended pleading. Momentum neither raised the omission in its answer filed on September 1, 2016, nor did it move for dismissal, at that time, based on the lack of filing of a certificate of merit.

On September 7, 2016, CSAC filed a motion for leave to designate Momentum as a responsible third party. It specifically alleged that it believed that Momentum designed the fiberglass cover and that the design did not include a lateral support beam at the point where Gonzalez fell. It alleged that Gonzalez's injuries would likely not have occurred if the lateral support beams had been included. It further alleged that, "to the extent support beams were needed, Momentum as the professional architect and engineering firm should have designed the substation to provide for the lateral safety support beams."

Momentum engaged in discovery over the next seventeen months and on February 6, 2018,

it filed a Motion to Dismiss for Plaintiff's Failure to File Certificate of Merit (hereinafter referred to as "Motion to Dismiss"). One month later, Momentum filed an amended answer in which it raised—for the first time—Gonzalez's failure to comply with Section 150.002 as an affirmative defense. The trial court conducted hearings on the Motion to Dismiss in March and August of 2018. On August 8, 2018, the court signed an order (the "Order") granting the Motion to Dismiss Gonzalez's claims against Momentum, with prejudice. The court later signed an order severing those claims into a separate cause number. Gonzalez filed a motion for new trial, which the court denied by written order, and this appeal followed.

## ISSUES PRESENTED

Gonzalez raises four issues on appeal. First, he argues that, under statutory construction principles, Section 150.002 does not apply to his claims against Momentum. Second, Gonzalez argues that if Section 150.002 does apply, the trial court erred in failing to determine whether Momentum waived its right to seek dismissal under Section 150.002, and that if the trial court made an implicit ruling of no waiver, it erred in so doing. Third, Gonzalez argues that if his claims against Momentum were to be dismissed, they should have been dismissed without prejudice. In Gonzalez's fourth and final issue, he contends that Section 150.002 is unconstitutional as applied to his claims against Momentum.

We address Gonzalez's first two issues below. Because we sustain Gonzalez's second issue, we reverse the trial court's order dismissing his claims against Momentum. Therefore, we need not address Gonzalez's third and fourth challenges. *See* TEX. R. APP. P. 47.1.

## STANDARD OF REVIEW

Generally, a trial court's ruling on a motion to dismiss under Section 150.002 is reviewed for abuse of discretion. *See Melden & Hunt, Inc. v. East Rio Hondo Water Supply Corp.*, 520

3

S.W.3d 887, 897 (Tex. 2017). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *In re Academy, Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021). Although the overall standard of review applied to a trial court's ruling on a motion to dismiss is for abuse of discretion, pure questions of law that lead to the trial court's ruling are reviewed *de novo*. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008) (stating that, even under an abuse-of-discretion review, appellate courts give no deference to a trial court on questions of law). And a trial court's "failure to analyze or apply the law correctly is an abuse of discretion." *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001) (orig. proceeding).

Here, the two challenges by Gonzalez that we address in this opinion both hinge on questions of law. *See Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017) (holding that matters of statutory construction are questions of law and thus reviewed *de novo*); *LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019) (holding that when there are no disputed facts, waiver presents a question of law, which is reviewed *de novo*). Thus, we review the two questions of law *de novo* in order to determine whether the trial court abused its discretion in granting Momentum's Motion to Dismiss.

## **DISCUSSION**

### A. **Issue One – Statutory Construction**

Gonzalez first argues that, under statutory construction principles, Section 150.002 does not apply to his claims against Momentum. He argues that his Second Amended Petition, which added Momentum as a defendant, did not initiate the overall lawsuit, and thus was not an "action" as that term is used in Section 150.002. If Gonzalez is correct, it follows that he would not have been required to file a certificate of merit. Conversely, Momentum argues that, although the

4

Second Amended Petition did not initiate the lawsuit, the amended pleading was an "action" under Section 150.002 because it did initiate the claims against Momentum and brought it into the case as a party for the first time.

**1. Applicable law**

When a question of statutory construction arises, the court's primary task is to determine the legislature's intent as expressed in the plain meaning of the language used in the statute. *Levinson*, 513 S.W.3d at 493. We are required to enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We are required to analyze the words of the statute and apply the plain meaning of those words "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Finally, we "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Office of Atty. Gen.*, 422 S.W.3d 623, 629 (Tex. 2013).

Section 150.002 was amended in 2019 in a manner that addresses some of the issues raised in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). But because this lawsuit predates that amendment, unless otherwise noted, all references to Section 150.002 in this opinion refer to the version of the statute in effect immediately prior to the 2019 amendment. Section 150.002(a), as it was written at the time this lawsuit was filed—and at the time of Gonzalez's Second Amended Petition—reads as follows:

> In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who: (1) is competent to testify; (2) holds the same professional license or registration as the defendant; and (3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's (A) knowledge; (B) skill; (C) experience; (D) education;

(E) training; and (F) practice.

Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (amended 2019) (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)).

The Supreme Court of Texas construed Section 150.002 in *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556 (Tex. 2014) (plurality opinion). In *Jaster*, a homeowner sued his contractor—Comet II Construction, Inc.—for damages arising from the allegedly negligent design and construction of his house's foundation. *Id.* at 559. Comet then asserted third-party claims against Austin Design Group—the design group from which it had purchased the foundation plans—and against Gary Wayne Jaster—the licensed professional engineer who had prepared the plans. *Id*. Austin Design Group filed a counterclaim against Comet and a cross-claim against Jaster. *Id*. Jaster moved to dismiss the claims against it brought by Austin Design Group and Comet because they had failed to file a certificate of merit, pursuant to Section 150.002. *Id*.

The trial court denied Jaster's motion to dismiss, and the Supreme Court of Texas ultimately affirmed that denial, holding that neither Comet nor Austin Design Group could be considered a "plaintiff" under Section 150.002; Comet was the defendant and Austin Design group was a third-party defendant. *Id*. at 571.

Although Gonzalez relies heavily on *Jaster* we determine that it does not support Gonzalez's position on this issue. The question in *Jaster* was whether a defendant or third-party defendant who filed a third-party claim or cross-claim against a licensed or registered professional was required to file a Section 150.002 certificate of merit, or whether that requirement applied only to the original plaintiff in the suit. *Id*. at 559. Thus, much of the court's discussion (in three

separate opinions) centered around the meaning of the word "plaintiff."[1] There is no question, though, that Gonzalez is the "plaintiff" in the present case.

The court in *Jaster* also engaged in an extended discussion of the meaning of "action" as used in the statute.[2] The plurality stated that "[t]he common meaning of the term 'action' refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action' asserted within a suit, cause, or proceeding." *Id.* at 563-64. Stated another way, an "action" is "a judicial proceeding in which parties assert claims for relief." *Id.* at 564. A "cause of action" or "claim," on the other hand, is "a legal right that a party asserts in the suit that constitutes the action." *Id.*

The *Jaster* plurality concluded that "section 150.002 requires 'the plaintiff' to file a certificate of merit in 'any [lawsuit] or arbitration proceeding' against a licensed professional, and 'the plaintiff' is a party who initiates the 'action' or suit, not any party who asserts claims or causes of action within the suit." *Id.* at 565. In addition, the Court in a later case stated that Section 150.002 requires that a certificate of merit "accompany the initiation of a lawsuit against these named design professionals[,]" *i.e.*, "architects, engineers, land surveyors, and landscape architects . . . ." *Melden & Hunt, Inc.*, 520 S.W.3d at 889-90. This reiterates and reinforces that, under the pre-2019 statute, the certificate of merit requirement falls on the party that initiates a lawsuit and names as a defendant a covered professional.

### 2. Application

There is no question that Gonzalez, as plaintiff, initiated this "action" or lawsuit, and that

---

[1] As a result of the 2019 amendment to Chapter 150, "plaintiff" has been replaced by "claimant," which is specifically defined as "a party, including a plaintiff or third-party plaintiff, seeking recovery for damages, contribution, or indemnification." TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001(1-a), 150.002(a).

[2] As a result of the 2019 amendment, the statute now defines "complaint" as "any petition or other pleading which, for the first time, raises a claim against a licensed or registered professional for damages arising out of the provision of professional services by the licensed or registered professional." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1-b).

he asserted claims against Momentum, a covered professional. Under the plain language of Section 150.002, *Jaster*, and *Melden & Hunt*, Gonzalez was required to file a certificate of merit contemporaneously with that amended petition. Gonzalez contends, though, that he did not initiate the "action" with his Second Amended Petition. But nothing in Section 150.002—or the plurality opinion in *Jaster*—places any significance on *why* or *when* a plaintiff files a lawsuit against a covered professional. Under *Jaster*, had CSAC filed a third-party petition against Momentum, it would not have been required to file a certificate of merit because it is not the plaintiff in this case. *Jaster*, 438 S.W.3d at 565 (third-party plaintiffs are not required to file affidavit because they are not the parties who initiated the suit). But Gonzalez did not somehow cease to be the plaintiff simply because CSAC was the first to raise the possibility that Momentum might be responsible for Gonzalez's injuries as the designer of the fiberglass cover.[3]

The fact remains that Gonzalez initiated this lawsuit, both generally and as against Momentum. We find no significance in the fact that the lawsuit against Momentum was initiated by means of an amended petition. *See Nangia v. Taylor*, 338 S.W.3d 768, 771 (Tex. App.—Beaumont 2011, no pet.) (applying certificate of merit requirement in context of amended petition joining professional engineer as defendant). On the contrary, "although a plaintiff may amend its petition, and thus file multiple petitions in a single action, the statute requires the plaintiff to file the certificate of merit with the first petition filed in the action that raises claims subject to its provisions." *TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 77 (Tex. App.—Dallas 2014, pet. denied); *accord Sharp Eng'g v. Luis*, 321 S.W.3d 748, 752 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("section 150.002 requires a plaintiff to file a certificate of merit with

---

[3] Gonzalez erroneously equates CSAC's identification of Momentum as a potential responsible third party with CSAC asserting a claim for relief against Momentum. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(i) (neither designation nor finding of fault imposes liability on responsible third party). Gonzalez is the only party in this case who asserted any claims against Momentum.

8

the first-filed complaint asserting a negligence claim against a professional").

As the plaintiff in an action for damages against a covered professional arising out of the provision of professional services, Gonzalez was required to file a certificate of merit. The trial court did not err in concluding that Section 150.002 applies. Gonzalez's first issue is overruled.

### B. Issue Two – Waiver

In Gonzalez's second issue, he argues the trial court erred in failing to rule on whether Momentum had waived its right to seek dismissal under Section 150.002. In response, Momentum argued: (1) that Gonzalez did not preserve the issue for appeal; (2) that the trial court implicitly ruled that Momentum did not waive its right to seek dismissal under Section 150.002; and (3) that the trial court was correct in so doing. In his reply, Gonzalez argued that he did preserve the issue and that any such implied ruling, if made by the trial court, was incorrect. Momentum then filed a sur-reply, arguing that this Court should not consider Gonzalez's arguments on the merits of the waiver issue asserted in his reply brief.

Below, we address these arguments in the following order: first, whether we may consider Gonzalez's waiver argument as presented in his reply brief; second, whether the trial court made an implied ruling concluding that Momentum did not waive its right to seek dismissal under Section 150.002; third, whether the issue of Momentum's waiver was properly preserved for appellate review; and finally, whether—as a matter of law—Momentum waived its right to seek dismissal.

### 1. Whether we may consider the arguments presented in Gonzalez's reply brief

As a preliminary matter, Momentum contends we should not consider the arguments set forth in Gonzalez's reply brief because "[t]he Rules of Appellate Procedure do not allow an appellant to raise an issue in a reply brief which was not included in his original brief." *Fox v. City*

9

*of El Paso*, 292 S.W.3d 247, 249 (Tex. App.—El Paso 2009, pet. denied) (citing TEX. R. APP. P. 38.3; *Few v. Few*, 271 S.W.3d 341, 347 (Tex. App.—El Paso 2008, pet. denied); *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 620 (Tex. App.—El Paso 2006, pet denied)). While we agree with the principle on which Momentum relies, we do not agree that it applies in this case.

Rule 38.3 provides that "[t]he appellant may file a reply brief addressing any matter in the appellee's brief." TEX. R. APP. P. 38.3. Momentum, in its Appellee's brief, argued that the trial court implicitly ruled on the waiver issue and that the facts concerning that issue were undisputed. Momentum then presented an extended discussion of why those facts support the implied ruling that it did not waive its right to dismissal under Section 150.002. We determine that Gonzalez was entitled, under Rule 38.3, to respond to those arguments. *See* TEX. R. APP. P. 38.3.

After full briefing, it is clear that the parties agree on two premises: first, that the trial court made an implicit ruling on the waiver issue, and second, that the facts relevant to the waiver issue are undisputed. However, Gonzalez urges this Court to reach a different legal conclusion on the waiver issue based on those undisputed facts. It would be a perversion of the appellate rules to permit Momentum to present its substantive analysis of the issue but to deny Gonzalez the opportunity to counter that analysis. As a result, if we first determine that the trial court ruled that Momentum did not waive its right to dismissal under Section 150.002, then we will further address Gonzalez's substantive contention that the trial court erred in so doing.

## 2. Whether the trial court ruled on the issue of waiver or not

The parties do not dispute that Gonzalez raised the issue of waiver in response to Momentum's Motion to Dismiss; and, to that extent, we agree the issue was presented to the trial court. After the second hearing on the Motion to Dismiss, the trial court announced in open court that it was granting the Motion to Dismiss based on its conclusion that Gonzalez was required to,

10

but did not, file a certificate of merit contemporaneously with his Second Amended Petition. The court also stated, "I'm not making any decisions at this point in time or making any findings as to whether there was a waiver or not a waiver. I don't think that's a question here for the Court." The court explained its reasoning for granting the Motion to Dismiss as being simply that the statute required Gonzalez to file the certificate of merit—"the word is 'shall' file . . . it did have to be filed, and, therefore, the motion to dismiss is granted."

When counsel for Gonzalez expressed his confusion over the court's refusal to rule on the waiver issue, the court explained further:

> I believe that that statutory provision is a requirement that it had to be filed. And so in doing so, anyway would really be moot or irrelevant, because I'm not making a decision on what happened after that. I'm making the decision on that it had to have been filed at that time.
>
> So I'm not making a decision on that. I'm only making a decision on the fact that it should have been filed, since it was triggered, and it was mandatory.

But the court also stated,

> So I think the law is very clear that there is no waiver; that they have that time. The case law that was provided on an 18-months type of situation and a 20-month type of situation, therefore, it wasn't waived. And that's what the finding was for the Court that heard these cases, and their precedent above that. . . . I think the law speaks for itself in these cases.

Gonzalez raised the issue of waiver again in his Motion for New Trial. At the hearing on Gonzalez's Motion for New Trial, the court again heard argument on this issue, as well as the issue of the applicability of Section 150.002. At the close of the hearing, the court stated that it had taken some time to distinguish the differences between this case and the case law provided by the parties "on both . . . issues[,]" but that it was happy to do so again. The court then denied the Motion for New Trial by written order.

We conclude that the trial court ruled that Momentum did not waive its right to seek dismissal. While it does appear, at first, that the trial court was not inclined to rule on the issue of

11

waiver, after Gonzalez pressed the issue, the court stated that "there is no waiver" and "it wasn't waived." Additionally, waiver was clearly presented to the court again in the context of Gonzalez's Motion for New Trial, where the court stated that it had reviewed the issue, as well as its intention to look at the matter again. Then the trial court signed an order denying the Motion for New Trial. These circumstances evidence a ruling by the trial court concluding that Momentum did not waive its right to dismissal under Section 150.002. TEX. R. APP. P. 33.1(a)(2)(A) (recognizing ruling may be express or implicit).

### 3. Whether the waiver issue was preserved for appellate review

To preserve a complaint for appellate review, a party must make "a timely request, objection, or motion" stating the grounds for the ruling that the party seeks "with sufficient specificity to make the trial court aware of the complaint . . . ." TEX. R. APP. P. 33.1. If the court refuses to rule on the request, objection, or motion, the party must then object to that refusal. *Id.*

As stated above, Gonzalez raised the issue of waiver in its response to Momentum's Motion to Dismiss. Although when giving a preliminary oral ruling on the Motion to Dismiss, the trial court appeared to indicate that it was not ruling on the issue of waiver, when pressed by counsel for Gonzalez, the trial court stated that "there is no waiver" and "it wasn't waived." Also, as stated above, it is undisputed that the issue was raised in Gonzalez's Motion for New Trial, which the trial court denied by written order. We determine that the denial of Gonzalez's Motion for New Trial included an implicit ruling on the waiver issue in favor of Momentum, which was consistent with the trial court's ruling on Momentum's Motion to Dismiss. As a result of the foregoing, we determine that Gonzalez's waiver argument was preserved for appellate review.

### 4. Whether Momentum waived its right to seek dismissal under Section 150.002

The Supreme Court of Texas has stated that Section 150.002 imposes a mandatory, but

non-jurisdictional, filing requirement. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 393 (Tex. 2014). Thus, the Court held "that a defendant may waive its right to seek dismissal under the statute." *Id.* Because the certificate of merit is not jurisdictional, the right to seek dismissal under the statute may be waived. *Id.* And because the facts and circumstances relevant to the issue of waiver in this case are undisputed, we decide this issue as a matter of law. *Crosstex*, 430 S.W.3d at 394.

Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Crosstex*, 430 S.W.3d at 391 (quoting *Sun Explor. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)); *see LaLonde v. Gosnell*, 593 S.W.3d 212, 218-19 (Tex. 2019). It is "primarily a function of intent." *Crosstex*, 430 S.W.3d at 393. Where waiver is asserted to be based on a party's conduct, that intent "must be clearly demonstrated by the surrounding facts and circumstances." *Crosstex*, 430 S.W.3d at 393; *see LaLonde*, 593 S.W.3d at 219 ("A party's conduct sufficiently demonstrates intent to waive a right if, in light of the 'surrounding facts and circumstances,' it is 'unequivocally inconsistent with claiming' that right.").

Momentum points to a 2008 case from this Court, *Apodaca v. Miller*, where we found—in the context of a plaintiff's failure to file a medical expert report within 180 days of filing a health care liability claim—that a "three-year delay in filing a motion to dismiss . . . is not a 'clear demonstration' of an intent to waive the statutory right to dismissal." 281 S.W.3d 123, 127 (Tex. App.—El Paso 2008, no pet.). Indeed, this Court went further in the *Apodaca* opinion to state that "[i]mplicit waiver is only inferred by Texas courts in extreme circumstances." *Id*. Aside from the fact that *Apodaca* arose in a completely different context and was based on a different statutory requirement and different waiver rules, it was also decided prior to the *LaLonde* case. In

13

*LaLonde*—a case dealing with the same statutory requirement as this case—the Supreme Court of Texas clarified the standard for determining implicit waiver based on a party's litigation conduct:

> [T]he universal test for implied waiver by litigation conduct is whether the party's conduct—action or inaction—clearly demonstrates the party's intent to relinquish, abandon, or waive the right at issue—whether the right originates in a contract, statute, or the constitution. This is a high standard.

*LaLonde*, 593 S.W.3d at 219-20. The Court further explained that this test requires a case-by-case approach considering "all the facts and circumstances attending a particular case" or, in other words, "the totality of the circumstances." *Id.* at 220.

The *LaLonde* Court began its substantive analysis of waiver by noting that "the right to dismissal under section 150.002 ordinarily arises immediately when a 'complaint' has been filed without an expert's sworn certification of merit." *Id.* For that reason, all litigation conduct by a party who is entitled to seek dismissal, but has not done so, is inconsistent with the right to seek dismissal. *Id.* at 221. Even so, "not all litigation conduct is necessarily *so inconsistent* with a party's rights under section 150.002 to imply an intent to relinquish those rights." *Id.*

*LaLonde* identifies several factors to be considered in assessing the totality of the circumstances relevant to waiver: (1) participation in discovery; (2) the stage of the litigation at which dismissal is sought; (3) the time elapsed in litigation; (4) seeking affirmative relief; and (5) participating in alternative dispute resolution. *Id.* at 223-26.

**(a)    Participation in discovery**

The *LaLonde* court noted that, "in the certificate-of-merit context, discovery may be pointless unless the defendant intends to waive the right to dismissal" because "the absolute right to dismissal clearly and unequivocally exists at the suit's inception . . . ." *Id.* at 224. However, engaging in discovery may not evidence an intent to waive the right to dismissal when such discovery "could help persuade the trial court to dismiss with prejudice . . . ." *Id.* Thus, "[a]n

implication of intent depends on the nature, degree, and extent of discovery activities under the circumstances." *Id.* For example, in *Crosstex*, the Supreme Court concluded that, even in the context of exchanging 11,000 pages of written discovery, "[a]ttempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal." 430 S.W.3d at 394. The defendant in *LaLonde*, on the other hand, engaged in extensive discovery "reflect[ing] preparation of the case for disposition on the merits contrary to their statutory right to a certificate of merit before commencing litigation activity and the related right to dismissal for noncompliance with that requirement." *LaLonde*, 593 S.W.3d at 227-28.

Gonzalez points out that Momentum filed numerous oral deposition notices, deposition subpoenas, subpoenas duces tecum, and notices of depositions on written questions, and that it initiated and responded to a variety of written discovery requests. Momentum responds that, like the defendant in *Crosstex*, its participation in discovery merely demonstrates that it was trying to learn more about the case. *See Crosstex*, 430 S.W.3d at 394.

As noted by the Supreme Court in *LaLonde*, "[i]f all the defendant does is parry a plaintiff's attacks or attempt to learn more about the case to determine eligibility for dismissal, engaging in [pretrial] discovery has little bearing on the defendant's intent to waive the right." *LaLonde*, 593 S.W.3d at 223-24. But when, as in the present case, "the absolute right to dismissal clearly and unequivocally exists at the suit's inception," there is no point in engaging in any discovery or in learning more about the case unless the defendant intends to waive that right to dismissal. *Id.* at 224. On the contrary, "actively pursuing discovery oriented toward a resolution on the merits strongly indicates the defendant intends to litigate and, thus, waive the statute's threshold requirements." *Id.* Still, the court emphasized that "[a]n implication of intent depends on the nature, degree, and extent of discovery activities under the circumstances. Not just quantity but

also quality." *Id.* We look, then, not only to the number of discovery activities in which Momentum participated, but the nature, degree, extent, and quality of those discovery activities.

Momentum's participation in discovery went far beyond merely "parry[ing] a plaintiff's attacks . . . ." *LaLonde*, 593 S.W.3d at 223. Momentum not only responded to Gonzalez's discovery requests, but it also initiated substantial written discovery and half a dozen oral depositions. In addition, most of Momentum's discovery sought information about Gonzalez's injuries and damages. Thirteen of its fourteen notices of deposition on written questions and twenty-two of its twenty-three subpoenas duces tecum were directed to the custodians of billing, medical, and radiology records for medical professionals. While the Supreme Court of Texas has acknowledged that discovery may be helpful in persuading a trial court to dismiss with prejudice, we fail to see how discovery relating to a plaintiff's injuries or damages would be of assistance in that context. *See id.* at 224. On the contrary, engaging in substantial discovery concerning damages indicates an intent to litigate on the merits rather than to avail oneself of the right to dismissal regardless of the merits.

We conclude that the nature, degree, extent, and quality of Momentum's discovery activities demonstrate an intent to waive the right to dismissal under Section 150.002. This factor weighs heavily in favor of Gonzalez.

**(b)    Stage of litigation**

The purpose of the certificate of merit requirement is to "weed out" frivolous cases early in the litigation process, not to dispose of potentially meritorious cases. *Id.* For this reason, "the more developed a case is, and the closer it is to trial, the stronger the implication becomes that the defendant intended to abandon the certificate-of-merit requirement and, accordingly, the remedy for noncompliance." *Id.*

The defendant in *LaLonde* advanced the litigation beyond the close of discovery until one month before the trial setting. *Id.* at 228. In fact, by the time the defendant filed its motion to dismiss, there was little left in the litigation process but disposition on the merits. *Id.* In contrast, at the time Momentum filed its motion to dismiss, the trial setting was still seven months distant and many of the deadlines established in the scheduling order had not yet passed. However, given the time and extensive discovery conducted, we cannot say that Momentum's Motion to Dismiss was filed early in the litigation process. We determine that this factor is either neutral, or—at most—weighs only slightly in favor of Momentum.

### (c)    Time elapsed in litigation

Silence or inaction, for a period sufficient to demonstrate an intent to yield a known right, may be enough to establish waiver. *LaLonde*, 593 S.W.3d at 225 n.56 (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)). And while the Supreme Court of Texas recognized that it would take a long time to be "enough," "every day a defendant has an absolute procedural right to dismissal yet does not exercise it is another small but cumulative indication of the defendant's intent to waive that right." *Id.* at 225.

The defendant in *LaLonde* waited 1,219 days (well over three years) before moving for dismissal, a period the Court characterized as "easily fall[ing] on the 'too long' end of the spectrum." *Id.* at 228. The time elapsed in the present litigation between the filing of the Second Amended Petition and the filing of Momentum's Motion to Dismiss is over seventeen months, or nearly a year and a half. This is considerably less than the forty-month delay in *LaLonde* (which was determined to be too long), but considerably more than the eight-month delay in *Crosstex* (which was not). *See LaLonde*, 593 S.W.3d at 228; *Crosstex*, 430 S.W.3d at 387.

We conclude that the length of Momentum's delay lends support to Gonzalez's position

17

that Momentum intended to waive its right to dismissal under Section 150.002. This factor weighs in Gonzalez's favor.

### (d)      Seeking affirmative relief

"[E]lecting to litigate the case to a merits-based disposition is conduct inconsistent with the right to dismissal of the case without litigation, without regard to the merits, and on terms that are within the trial court's discretion." *LaLonde*, 593 S.W.3d at 225. The defendant in *LaLonde* filed an affirmative claim for attorney's fees and twice filed motions to shift liability to responsible third parties. *Id.* at 228-29. The court determined that those actions unequivocally demonstrated that the defendant not only intended to, but actually was, litigating the merits. *Id.* at 229.

It appears that the only affirmative relief Momentum sought in this case was a request to designate El Paso Electric Company—Gonzalez's employer and the owner of the property where his injuries occurred—as a responsible third party. That motion was granted. Although this was the only affirmative relief requested by Momentum, the import of designating a responsible third party is to give the ultimate trier of fact the opportunity to apportion fault to that third party and, thus, to relieve the defendant of some or all responsibility for the plaintiff's damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (trier of fact shall determine percentage of responsibility of each claimant, defendant, settling person, and designated responsible third party). This factor demonstrates an intent by Momentum to litigate Gonzalez's claims on the merits and, thus, to waive its right to seek dismissal of those claims. This factor weighs heavily in favor of Gonzalez.

### (e)      Participating in alternative dispute resolution

Whether the defendant engages in mediation before seeking dismissal is a factor to consider, but one with limited value. *LaLonde*, 593 S.W.3d at 225-26. While participating in alternative dispute resolution tends to indicate an intent to contest the merits of the case, it is not,

alone, sufficient to clearly demonstrate an intent to waive the right to dismissal. *Id.* at 226.

The defendant in *LaLonde* participated in two mediations, one over a year before moving for dismissal, and a second only two days before moving for dismissal. *Id.* at 228. In the present case, there is no evidence that Momentum participated in any alternative dispute resolution proceedings, or that any such proceedings were ever proposed, either by the court or the parties. This factor weighs in favor of Momentum.

In summary, we determined that both the first and fourth *LaLonde* factors—Momentum's participation in discovery and its affirmative relief sought—weigh heavily in favor of waiver. We also determined that the third factor—time elapsed in litigation—weighed slightly in favor of waiver. Conversely, we found that the second factor—the stage of litigation—was either neutral or weighed slightly against waiver while the fifth factor—participation in alternative dispute resolution—weighed against waiver. We keep in mind that the fifth factor is to be considered with limited value. *LaLonde*, 593 S.W.3d at 225-26.

No single factor discussed above is dispositive; they are to be weighed against one another and considered as part of the totality of the circumstances. *See LaLonde*, 593 S.W.3d at 220. The parties variously urge that this case is governed by *Crosstex*, in which no waiver was found, or *LaLonde*, in which waiver was found. Although the facts and circumstances of this case are unique and fall somewhere between *Crosstex* and *LaLonde*, we ultimately find they lean closer to *LaLonde* given Momentum's extensive discovery of Gonzalez's medical treatment records, its delay of more than double the time of *Crosstex* before seeking dismissal, and its seeking of affirmative relief in the form of requesting apportionment of fault to a third party. We conclude that the totality of the facts and circumstances in this case demonstrate intentional conduct on Momentum's part that is so inconsistent with claiming the right to dismissal under Section 150.002 as to establish its intent

19

to waive the right to dismissal. *See LaLonde*, 593 S.W.3d at 219-20; *Crosstex*, 430 S.W.3d at 391.

Gonzalez's second issue on appeal is sustained and the trial court's order dismissing his claims against Momentum is reversed. As a result, we need not discuss Gonzalez's third and fourth issues.

## **CONCLUSION**

Having sustained Gonzalez' second issue, we reverse the trial court's order of dismissal and remand this case to the trial court for further proceedings consistent with this opinion.

GINA M. PALAFOX, Justice

September 9, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Alley, J., dissenting